## Wallace v. Cameron, Secretary of Banking.

*Appeals—Act of June 14, 1923.*

The suspension of a dealer's license is a decision by the Secretary of Banking, from which an appeal lies under section 19 of the Act of June 14, 1923, P. L. 779.

Motion to dismiss petition. C. P. Dauphin Co., Commonwealth Docket, 1925, No. 126.

*Frysinger Evans,* for plaintiff.

*J. W. Brown,* Deputy Attorney-General, for defendant.

WICKERSHAM, J., Nov. 2, 1925.—This case came on to be heard on petition and motion for rule to show cause why petition for reversal of order suspending dealer's license should not be dismissed. All the relative matters in the petition are, therefore, admitted.

### Findings of fact.

1. George William Wallace has been a citizen of Pennsylvania for nineteen years, and has continuously been in the business of buying and selling securities, selling securities as a broker, and taking subscriptions and orders for securities, and, in general, dealing in securities, as set out in section 2*(c)* of the Securities Act of June 14, 1923, P. L. 779.

2. His good repute has not been questioned, and he was informed by the Securities Bureau that only the interpretation of the Securities Act as to the rights of the licensed dealer is at issue.

3. He was licensed as a registered dealer under the provisions of the Securities Act, approved June 14, 1923, on Aug. 1, 1923, and his dealer's license has been renewed from year to year.

4. On July 2, 1925, he was summoned to appear before the Secretary of Banking, as follows: "You are required to be present at a hearing to be held at the Bureau of Securities, Room 416 State Capitol Building, Harrisburg, Pa., on Wednesday, July 8th, at 1 P. M., Eastern Standard Time. This hearing is to be held in connection with your registration as a dealer under the Securities Act. You will bring with you to this hearing your books and records to show all sales of securities made by you since Aug. 1, 1923."

5. On July 8, 1925, the petitioner appeared before W. J. Fallows, Deputy Secretary of Banking, and answered for record all questions asked by the deputy and was told that his plan of doing business, as he theretofore conducted it, was contrary to law, for the reason that "no licensed dealer could lawfully sell securities on commission as a broker and in no other way could a licensed dealer handle securities except by buying them outright and then selling the same. That in selling securities or taking subscriptions for securities of a licensed corporation or unlicensed corporation, for a commission or as a broker, he violated the provisions of said Securities Act, and had violated the law in so doing."

6. On July 9, 1925, the petitioner addressed the following letter to W. J. Fallows, Deputy Secretary, Bureau of Securities: "Since hearing your opinion of the distinction between a 'dealer' and an 'agent,' which distinction I did not appreciate until yesterday, I beg to inform you that I do not intend as a 'dealer' being interested in any securities where this question may arise, and shall confine my business exclusively to the functions of a 'dealer' as you interpret them, that is, buying and selling bonds and stocks usually offered by banking houses."

7. On July 13, 1925, the petitioner received the following letter: "Under authority given in section 16 of the Securities Act, your registration as a dealer is hereby suspended and you are hereby notified to appear before this bureau, Room 416 Capitol Building, Harrisburg, Pa., on Tuesday, July 21st, at 1 P. M., Eastern Standard Time, to show cause why your registration should not be permanently revoked. Pending this hearing, you will at once return Dealer's Registration Certificate No. 544, issued to you Jan. 1, 1925. W. J. Fallows, Deputy Secretary."

8. On July 21, 1925, the petitioner did show cause why his registration should not be permanently revoked in an affidavit answering the complaint of the Secretary of Banking, which affidavit is now on file in the office of said secretary; but, deeming his affidavit sufficient, he did not appear in person on that date.

9. On Aug. 12, 1925, the petitioner presented his petition to this court, setting forth the facts as we have found them to be, whereupon the Attorney-General filed his motion that the petition for appeal of the plaintiff should be dismissed.

## *Discussion.*

The motion of the Attorney-General that the petition for the reversal of the order suspending the dealer's license filed by the petitioner should be dismissed sets forth the following reason: "The suspension of dealer's license was not a 'decision' by the Secretary of Banking from which an appeal lies. It is an interlocutory order, upon which no 'decision' can be made until after a hearing has been held as provided by the Securities Act."

To sustain the authority of the Secretary of Banking to suspend the license of the petitioner, the learned Attorney-General is depending upon the construction placed upon sections 16 and 19 of the Securities Act; but, before taking up this matter, it is well to bear in mind the procedure followed by the Securities Bureau. The petitioner was notified to appear before the Securities Bureau on July 8, 1925. He appeared and was heard upon the question whether he was guilty of violating the Securities Act. The next day, July 9, 1925, the petitioner notified the Securities Bureau that, since hearing their opinion of the distinction between a "dealer" and an "agent," "which distinction he did not appreciate until yesterday," he begged to inform the bureau as follows: "I do not intended as a dealer being interested in any securities where this question may arise, and shall confine my business exclusively to the functions of a dealer, as you interpret them; that is, buying and selling bonds and stocks usually offered by banking houses." It thus appeared that he was either guilty or not guilty of violating the provisions of the Securities Act. If guilty, he was unaware of his guilt until informed by the Securities Bureau. Whether the interpretation placed upon the act by that bureau is correct we do not now decide, as that question is not before us; but it does appear that the petitioner expressed entire willingness to comply with the orders of the bureau until that question was judicially determined. Disregarding the willingness of the petitioner to comply with the directions of the Securities Bureau and that a hearing upon this very question had been held, four days after the letter of July 9, 1925, had been addressed to the bureau by the petitioner, he, the petitioner, was again notified to appear for a hearing (not a further hearing, but for a hearing) to show cause why his registration should not be permanently revoked, and pending this hearing his registration was suspended.

The petitioner returned his certificate of registration as requested. He did not appear in person on July 21st, the time fixed by the Securities Bureau for his hearing, but appeared by affidavit—set forth fully and at length on page 5 of the petition—in which he gives reasons (see page 7 of petition) why his dealer's license should not be revoked, among them being, "because of a possible error in the interpretation by the Bureau of Securities of the definition of the word 'dealer' as set out in the act;" and in various paragraphs of said affidavit the petitioner squarely raises the question as to the proper legal interpretation of the word "dealer" as contemplated by the said act.

The facts had been determined at the hearing held July 8th; there were no new facts to be disclosed by a further hearing, and it seems to us to be begging the question to now contend that final action in the petitioner's case has not been taken because he did not appear for a hearing July 21st; as, for all practical purposes, the petitioner's case was squarely set forth in his affidavit in reply to the notice to appear, and, upon consideration of the facts set forth in the said affidavit, it would have been entirely proper, and possible, for the Secretary of Banking to have rendered a decision, either that the registration of the petitioner should be permanently revoked or that the suspension should be lifted.

We will now proceed to examine the interpretation placed upon section 16 of the Securities Act by the Secretary of Banking. This section provides, inter alia (see Act of June 14, 1923, P. L. 786) : "If the commissioner at any time has reason to believe any dealer has in any way violated, or is violating, or is about to violate, any of the provisions of this act, or has been guilty of any fraud or fraudulent practice, then the commissioner may, after hearing,

and having reasonable cause to believe that the dealer has been guilty of such offence, revoke said dealer's registration."

Proceeding under authority of the above-quoted paragraph of section 16 of the said act, the petitioner was notified to appear, and did appear, before the Securities Bureau for examination on July 8, 1925. He was then and there advised that his stock transactions as a registered dealer in securities were, as interpreted by the said Securities Bureau, in violation of paragraph (c), section 2, of the act. The petitioner, by letter dated July 9, 1925, agreed to comply with the requirements of the Securities Bureau, notwithstanding his protest that such interpretation was not sustained by the plain wording of paragraph (c), section 2, of the Securities Act.

The Secretary of Banking also relies upon a subsequent paragraph of section 16 of the act, which further provides: "If the commissioner believes the public interest may be endangered by such dealer continuing in business pending such hearing, the commissioner may also suspend such dealer's registration pending such hearing." This language does not apply to a situation such as that before us. The petitioner had already been heard, and we think the duty of the Secretary of Banking clearly was to either revoke or not to revoke his registration and not to suspend it. He had supplied the Securities Bureau with all the information they requested. What further hearing was necessary, except possibly to pass upon the legal questions raised? The actual personal presence of the petitioner was not necessary to a decision of a question involving only the interpretation of a word used in the Securities Act. These questions have not been adjudicated, and the defendant now seeks to avoid such adjudication by asking that this appeal be dismissed rather than that it be sustained, in order that the legal questions raised upon the record may be judicially decided. Had the Secretary of Banking suspended the petitioner's registration prior to the first hearing, we think he would have been strictly within his rights. This, however, he did not do, nor did he see fit to revoke the registration of the petitioner after the hearing. It is significant, also, that the registration of the petitioner was suspended July 13, 1925, four days after he had agreed in writing to abide by the interpretation placed upon the act by the Securities Bureau. More than three months have passed, yet the Securities Bureau has not acted upon the reply of the petitioner, the only excuse for this delay being that the petitioner did not appear in person for a second hearing. This action on the part of the Secretary of Banking was unwarranted.

We cannot agree with the learned Attorney-General that the allowance of this appeal in any way interferes with the discretion of the Secretary of Banking. Had he suspended the registration of the petitioner at the time the first notice was given, there might be some merit to this contention.

Section 19 of the act (see Act of June 14, 1923, P. L. 787) provides that: "Any dealer, salesman or agent aggrieved by any decision of the commissioner may file within thirty days thereafter in the Court of Common Pleas of Dauphin County a petition against the commissioner officially as defendant, alleging therein in brief detail the action and the decision complained of, and praying for a reversal thereof.

We think the petitioner has been aggrieved by the undisputed proceedings which appear upon this record. Either the order of July 13, 1925, suspending the registration of the petitioner and signed by Fallows, was a decision of the Secretary of Banking or it was not. If it was not—if Fallows had no authority under the act to issue the order—and we think he had no such authority—then the petitioner has never been lawfully suspended. If the

order did constitute a decision of the Secretary of Banking, then it was a decision contemplated by section 19 of the act, for which this plaintiff is aggrieved. The motion to strike off the appeal should be dismissed.

### Conclusions of law.

1. The motion of the Attorney-General to dismiss the petition of the plaintiff is overruled.

2. The Secretary of Banking is directed to answer the petition of the plaintiff in the manner provided in section 19 of the Securities Act.

From Sidney E. Friedman, Harrisburg, Pa.